Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROLYN S., <br><br>                   **Plaintiff,** <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                   **Defendant.** | Civil Action No. 21-10858 (EP) <br><br> **OPINION** |

**PADIN, DISTRICT JUDGE**

Plaintiff Carolyn S. appeals the decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq*. *See* D.E. 1. For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner.

**I.      BACKGROUND**

On March 15, 2018, Plaintiff filed an application for SSI. D.E. 6, Administrative Record ("R.") 169. She claimed disability due to scoliosis and progressive external ophthalmoplegia. R. 202. Plaintiff's application was denied initially on September 15, 2018, and again on reconsideration on April 10, 2019. R. 11, 89, 103. On May 13, 2020, an Administrative Law Judge ("ALJ") held a hearing, at which Plaintiff and a vocational expert testified. R. 41-75.

On October 28, 2020, the ALJ denied Plaintiff's SSI application. R. 8-22. The ALJ ruled that Plaintiff's impairments did not meet or medically equal a listed impairment that would automatically render her disabled. R. 15-16. The ALJ further ruled that Plaintiff had the residual functional capacity to perform her past relevant work as a home health aide as well as several other jobs that exist in significant numbers in the national economy. R. 16-21.

The Appeals Council denied Plaintiff's request for review on or about March 11, 2021. R. 1-7. Plaintiff then filed the instant appeal, over which the Court has subject-matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner opposes. D.E. 15.

## II.   LEGAL STANDARD

### A.   Standard Governing Commissioner's Disability Determinations

To receive SSI, a claimant must show that he is "disabled" within the meaning of the Act. 42 U.S.C. § 1382(a). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a claimant qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

In evaluating whether a claimant is disabled as defined in the Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his

RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a).

In the first four steps, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  *See Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the fifth and final step, the Commissioner bears the burden of proving that work is available for the plaintiff.  *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir. 1983).  Stated somewhat differently, the claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him from doing past relevant work.  20 C.F.R. § 404.1512(a).  Once the claimant has established at step four that he cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his RFC, age, education, and past work experience.  20 C.F.R. § 404.1512(f).

B.      **Standard of Judicial Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's

3

conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willbanks v. Secretary of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. *Id.* (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, *Fargnoli*, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or

4

substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. *Sykes*, 228 F.3d at 262; *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Curtin v. Harris*, 508 F. Supp. 791, 793 (D.N.J. 1981).

## III.   THE ALJ's DECISION

The issue before the ALJ was whether Plaintiff was entitled to SSI benefits for the period between March 15, 2018, when she applied for those benefits, and October 28, 2020, the date on which the ALJ denied that claim.[1]  *See Dunson v. Comm'r Soc. Sec.*, 615 F. App'x 65, 67 n.2 (3d Cir. 2015) ("The relevant period for her SSI claim began on the date she applied for benefits, and ended on November 2, 2011, the date of the ALJ's decision").

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application, March 15, 2018.  R. 13.

At step two, the ALJ found that Plaintiff had medically determinable impairments, or a combination of impairments, that were "severe."  *Id.*  In particular, the ALJ found that Plaintiff's scoliosis, bilateral ptosis/ophthalmoplegia, and sleep apnea were severe.  *Id.*  The ALJ also found that Plaintiff had several additional non-severe impairments; namely, hypertension, hyperlipidemia, cardiomyopathy, and adjustment disorder with anxiety.  *Id.*

---

[1] The fact that Plaintiff's subsequent SSI application, which she filed on April 16, 2021, was approved, *see* D.E. 13-1 at Ex. 1, has no bearing on the propriety of the ALJ's earlier decision denying benefits.  *See*, *e.g.*, *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 120 (3d Cir. 2012) (subsequent finding of disability, even one day later, does not warrant remand of a prior unfavorable decision); *Plaza v. Barnhart*, 218 F. App'x 204, 207 (3d Cir. 2007) ("A favorable decision on an application for a later time period plainly does not relate to [plaintiff's] condition during the time period at issue in this case."); *Soto v. Comm'r of Soc. Sec.*, No. 17-89-KM, 2018 WL 355138, at *7 (D.N.J. Jan. 10, 2018) (finding remand unwarranted based on a subsequent award of disability dated one day after the ALJ's previous non-disability finding); *Wright v. Comm'r of Soc. Sec.*, No. 15-3965 (ES), 2016 WL 5852854, at *6 (D.N.J. Oct. 4, 2016) ("[W]hile Plaintiff's evidence from her subsequent application may have established her disability as of September 1, 2012, that evidence is immaterial to whether Plaintiff was disabled before September 1, 2012.").

5

At step three, the ALJ found that Plaintiff did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a listed impairment that would render her disabled as a matter of law. R. 15. In so finding, the ALJ specifically considered listings 1.04 (disorders of the spine), 2.03 (loss of visual field), 11.13 (muscular dystrophy), and 12.06 (anxiety and obsessive-compulsive disorders). R. 15-16.

At step four, the ALJ found that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR 416.967(c) except she can occasionally climb ropes, ladders, or scaffolds; never be exposed to unprotected heights; frequently climb stairs and ramps; frequently crawl; able to wear shaded lenses; occasionally use depth perception and peripheral vision; and have no required vocational driving.

R. 16.

The ALJ accordingly found that Plaintiff was "capable of performing past relevant work as a Home Health Aide (DOT# 354.377-014) with an SVP-3 and medium exertional level but performed at the heavy exertional level." R. 20.

Finally, at step five, the ALJ found that with Plaintiff's RFC, she could, in addition to being able to perform her past relevant work as a home health aide, perform other jobs that exist in significant numbers in the national economy; specifically, as a hand packer (42,000 jobs); a coffee maker (65,000 jobs); and a kitchen helper (280,000 jobs). R. 21. In so finding, the ALJ again relied on the vocational expert's testimony. R. 21.

The Court notes that the ALJ's conclusions are supported by substantial evidence within the record. Indeed, the ALJ summarized, in extensive detail, which specific medical evidence in the record supported his findings. R. 16-20. He also noted which medical opinions he found to be most credible and those that he found to be not credible. R. at 20. And he properly accounted for the testimony of Plaintiff and the vocational expert. 20-21.

IV.     DISCUSSION

Plaintiff's brief contains the following enumerated points which she asserts warrant remand:  Point I – "The ALJ misstated other medical evidence in key respects so that his findings in steps 2-5 cannot be based on substantial evidence;" Point II – "New and material evidence confirms the diagnosis of DMD and RYR1 myopathy submitted after the ALJ decision warrants a reversal and remand under sentence six of 42 U.S.C. 405(g) . . . ;" Point III – "The ALJ failed to accord substantial weight to the treating specialists," and more specifically, to Dr. Nizar Souayah (at Point III.A.) and Dr. Thomas Puzio (at Point III.B); Point IV – "The ALJ reversibly erred by improperly evaluating [Plaintiff's] subjective complaints;" and Point V – The ALJ's finding that [Plaintiff] can perform her past relevant work as a home health aide as generally performed or other medium work is not supported by substantial evidence." D.E. 13.  The Court will address each of these claims in turn.  Before doing so, however, the Court must make several key observations that otherwise inform its analysis.

First, Plaintiff, throughout her brief, raises a plethora of additional claims and assertions that go beyond those arguments which she has most cogently pled, at Points II, III.A, III.B, and V of her brief.  These additional one-off assertions about the purported improprieties of the ALJ's decision, and the litany of similar claims Plaintiff includes in Points I and IV, are presented in a way that is fragmented, repetitive, scattershot, and otherwise incomplete.  The Court is not obligated to consider such undeveloped arguments. *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) (the inclusion of only "one conclusory sentence" in an argument constitutes an "undeveloped argument [that] has been waived"); *Laborers Int'l Union of N.A. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("' a passing reference to an issue . . . will not suffice to bring that issue before this court.'"); *Berrocal v. Astrue*, No. 2:10-CV-02226, 2011 WL 890150,

at *3 (D.N.J. Mar. 14, 2011) ("Plaintiff's arguments are entirely conclusory. . . . Such undeveloped arguments are considered abandoned or waived").

Second, this Court's "review of the ALJ's decision is highly deferential." *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 687 (3d Cir. 2020). Again, the primary issue that this Court is charged with resolving "is not whether [it] would have arrived at the same decision [as the ALJ]; it is whether there is substantial evidence supporting the [ALJ's] decision." *Donatelli v. Barnhart*, 127 F. App'x 626, 630 (3d Cir. 2005). Similarly, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Social Security*, 306 F. App'x 761, 764 (3d Cir. 2009).

And third, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur*, 94 F. App'x at 133; *accord Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."). Bearing the foregoing considerations in mind, the Court now turns its attention to Plaintiff's specific claims.

### A. Point II of Plaintiff's Brief

Plaintiff, at Point II of her brief, avers that remand is warranted in light of her presentation of new evidence that was not before the ALJ at the time he rendered his decision on October 28, 2020. D.E. 13 at 21-26. The specific evidence that Plaintiff points to consists of: (1) Plaintiff's final genetic testing results, dated June 9, 2021, which she did not receive sooner "[d]ue to delays caused by COVID;" (2) a March 10, 2021 letter from Dr. John R. Bach opining that Plaintiff "is not able to work;" and (3) additional examination notes from Dr. Bach dated February 24, 2021 and August 11, 2021. *See* D.E. 13-1 at Exs. 2-4.

Under sentence six of 42 U.S.C. § 405(g), the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Remand under this provision is appropriate only where such evidence is: (1) new; (2) material; and (3) good cause exists for not presenting it to the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Evidence is only considered "new" if it was "not in existence or available to the [plaintiff] at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Evidence is only material if it creates a reasonable possibility that it would have changed the ALJ's decision had it been presented to him. *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984); *Gurcak v. Astrue*, No. 12-CV-4556 CCC, 2013 WL 6816175, at *5 (D.N.J. Dec. 20, 2013) (same). "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 at 833.

The Court finds that Plaintiff's post-October 28, 2020 medical records fail to provide a basis for the Court to remand this matter under sentence six of 42 U.S.C. § 405(g). As to Dr. Bach's March 10, 2021 letter, it speaks to Plaintiff's inability to work as of that date. *See* D.E. 13-1 at Ex. 3 ("This letter is to inform you that [Plaintiff] is not able to work."). Similarly, Dr. Bach's progress notes, dated February 24, 2021 and August 11, 2021, ultimately speak to Plaintiff's condition on the dates of those visits. *See* D.E. 13-1 at Ex. 4. Dr. Beth Pletcher's follow up genetic encounter notes, dated June 9, 2021, which indicate that Plaintiff "carries a DMD mutation in addition to the RYR1 mutation, and it is the combination of both of these that likely result in her more significant myopathy, decreased stamina and mild cardiomyopathy. . . . [and that s]he has

substantial muscle weakness and poor stamina, and is therefore not able to work," *see* D.E. 13-1 at Ex. 2, likewise speaks to Plaintiff's condition as of the date of that report.  That the foregoing documents, at points, reference Plaintiff's prior medical history does not alter the fact that all of these documents are, at their core, contemporaneous in nature.

Moreover, the fact that Dr. Pletcher's June 9, 2021 genetic testing notes indicates that Plaintiff is genetically predisposed to "more significant myopathy, decreased stamina and mild cardiomyopathy" does not, contrary to Plaintiff's assertion, necessarily impact the ALJ's October 28, 2020 analysis.  *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability."); SSR 16-4p, 2016 WL 1575064, at *7 ("Genetic test results generally do not provide us with significant information about impairment severity or functional capacities.").

In sum, the new evidence presented by Plaintiff, all of which ultimately provides contemporaneous observations about Plaintiff's various medical conditions and ailments on various dates in 2021, is not relevant to the period of disability that was at issue before the ALJ, *i.e.*, through October 28, 2020.  *See Anderson v. Comm'r of Soc. Sec.*, No. CIV. A. 07-1680 JAP, 2008 WL 619209, at *13 (D.N.J. Mar. 4, 2008) ("The Court finds these additional medical records are not new evidence that raise the possibility of a reversal.  The records are all dated after the ALJ made his decision on July 7, 2005.  They do not relate to the period of time considered by the ALJ in rendering his decision.  Furthermore, the records would not have had any impact on the ALJ's decision as the medical assessments post-date the decision.  Therefore, there is no need to remand the case to the ALJ because the evidence is not new and material.").  Remand pursuant to sentence six of 42 U.S.C. § 405(g) is therefore inappropriate.

B.     **Point III.A of Plaintiff's Brief**

Plaintiff, in Point III.A of her brief, argues that the ALJ failed to accord substantial weight to the medical "opinion" of Dr. Nizar Souayah, who periodically treated Plaintiff during her visits to the Rutgers Neurological Institute of New Jersey.  D.E. 13 at 27.  The record before the ALJ contains Dr. Souayah's notes on Plaintiff's periodic visits with her from September 24, 2014 through May 6, 2020.  *See*, *e.g.*, R. 434-454, 575-618, 789-836.  Dr. Souayah's notes reflect that Plaintiff suffers from bilateral ptosis, progressive external ophthalmoplegia, and muscle weakness.  Importantly, Dr. Souayah, does not, contrary to Plaintiff's assertion, appear to have offered any formal opinion regarding Plaintiff's ability to work in light of her various medical ailments.  *See* 20 C.F.R. § 416.913(a)(2) (defining medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environment conditions).  Indeed, Dr. Souayah's notes speak only to her various medical evaluations of Plaintiff and her accompanying treatment recommendations.  Even more critically, as discussed *infra*, the ALJ incorporated Dr. Souayah's specific medical observations into his analysis, albeit without express reference to Dr. Souayah.  Plaintiff's Point III.A assertions accordingly ring hollow.

C.     **Point III.B of Plaintiff's Brief**

Plaintiff, in Point III.B of her brief, avers that the ALJ improperly rejected the medical opinion of Dr. Thomas Puzio, Plaintiff's ophthalmologist.  D.E. 13 at 29.  Dr. Puzio's medical opinions regarding Plaintiff's visual limitations are set forth on two forms, totaling three pages, both of which are dated May 27, 2020.  R. 713, 720-21.  The ALJ discounted Dr. Puzio's conclusions as "not persuasive because the degree of interference or problems are not specified

and some of the limitations are not supported by the [medical] evidence in the record." R. 19. There is substantial record support for the ALJ's finding. The ALJ, for example, noted that in February 2018, during a visit with Dr. Souayah, Plaintiff's ptosis was recorded as stable, R. 18, 431; that in July 2019, Plaintiff told another ophthalmologist, Dr. James P. Milite, that she was doing fine and happy with her ptosis repair, R. 18, 744; that in January 2020, Dr. Milite wrote that Plaintiff's surgery was holding well and there was no indication for further correction, R. 19, 624; and that in May 2020, Plaintiff denied blurred or double vision to Dr. Souayah. R. 18, 789. In addition, in July 2020, Plaintiff indicated, during another visit with Dr. Souayah, that her condition was stable. R. 901. Furthermore, the ALJ found the opinion of ophthalmological consultative examiner, Dr. John Boozan, who concluded that Plaintiff could sit, stand, lift, work, and read at a desk for a full day's work without restriction, to be persuasive. R. 19, 479. Notably, the ALJ did not find Plaintiff had no functional limitations as result of her vision; he included limitations in the RFC including the ability to wear shaded lenses, only occasionally use depth perception and peripheral vision, and have no required driving. R. 16.

In short, there is substantial evidence in the record which supports the ALJ's decision to discount Dr. Puzio's medical opinion as not persuasive. Remand for this reason is therefore not appropriate. *See Malloy*, 306 F. App'x at 764 ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision."); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (emphasizing that substantial evidence is only more than a mere scintilla and a reviewing court should "defer[] to the presiding ALJ, who has seen the hearing up close").

    **D.**    **Point IV of Plaintiff's Brief**

In Point IV of her brief, Plaintiff avers that reversal is warranted because the ALJ

improperly evaluated Plaintiff's subjective complaints.  D.E. 13 at 31.  Notably, an individual is not required to be pain-free or experiencing no discomfort in order to be found not disabled.  *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986); *accord Morel v. Colvin*, No. CV 14-2934 (ES), 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016) ("[t]he claimant need not be pain-free to be found 'not disabled.'").  Moreover, a claimant's subjective complaints alone can never establish disability.  *See* 20 C.F.R. § 416.929.  Rather, assessing a claimant's subjective complaints is the province of the ALJ and occurs via a two-step regulatory process.  20 C.F.R. § 416.929(a).  First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms.  *Id.*  Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities; for this purpose, whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain and other symptoms are not substantiated by objective medical evidence, the ALJ must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.  *Id.*  So long as substantial evidence supports the ALJ's conclusions, the Court should afford it "great deference."  *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007).  The ALJ's evaluation in this regard has been described as "virtually unreviewable on appeal."  *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015).

   Here, the ALJ applied the two-step regulatory process for evaluating Plaintiff's subjective complaints.  R. 19.  "After careful consideration of the evidence," which included Plaintiff's hearing testimony, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause [her] alleged symptoms; however, [Plaintiff's] statements, concerning the intensity, persistence and limiting effects of th[ose] symptoms [we]re not entirely

consistent with the medical evidence and other evidence in the record." R. 17. The Court finds that the ALJ's determination is supported by substantial record evidence.

As to Plaintiff's physical exertional abilities, the ALJ expressly noted, *inter alia*, that Plaintiff chose not to undergo corrective surgery to address her scoliosis in February 2018 and was instead referred for physical therapy. R. 17, 426. And that Plaintiff reported increased pain and difficulty with stairs, but admitted to the continued ability to perform all activities. R. 17, 426. The ALJ also expressly noted that on August 14, 2018, Plaintiff underwent a consultative examination during which she ambulated and got on and off the exam table without difficulty, could heel and toe walk, did not use an assistive device, was not uncomfortable in a seated position, had negative straight leg raise testing, and had normal range of motion throughout. R. 17-18, 474-75. In addition, the ALJ noted that although Plaintiff reported back pain and weakness in January 2020, Dr. Souayah contemporaneously found she walked with normal gait and was able to perform tandem walking and walk on her heels and toes. R. 18, 793. Moreover, the ALJ explained that in May 2020, Plaintiff could move all of her extremities against gravity and walk, and that Dr. Souayah found Plaintiff had largely normal examination findings from her last visit. R. 19, 790. The ALJ also expressly indicated that when Plaintiff visited Dr. Souayah in July 2020, her motor exam showed normal gait, sensation, coordination, bulk, tone, and dexterity, and normal strength except for mild weakness in the iliopsoas, 4-/5. R. 19, 902. The ALJ further noted that the consultative examiner, Dr. Bagner, found that Plaintiff could ambulate without difficulty (and without an assistive device) and was not uncomfortable in a seated position. R. 19, 75.

As to Plaintiff's vision, the ALJ noted Plaintiff's ptosis was recorded as stable during a visit with Dr. Souayah in February 2018, R. 18, 431; that in July 2019, Plaintiff told her ophthalmologist, Dr. Milite, that she was doing fine and happy with her ptosis repair, R. 18, 744;

that in January 2020, Dr. Milite wrote that Plaintiff's surgery was noted as holding well and there was no indication for further correction, R. 19, 624; and in May 2020, Plaintiff denied blurred or double vision to Dr. Souayah. R. 18, 789. In addition, in July 2020, Plaintiff told Dr. Souayah that her condition was stable. R. 19, 901. The ALJ also found the opinion of the ophthalmological consultative examiner, Dr. Boozan, who concluded that Plaintiff could sit, stand, lift, work, or read at a desk for a full day's work without restriction, persuasive. R. 19, 479.

Finally, the ALJ considered Plaintiff's mental condition, but found Plaintiff only had mild limitations in the four domains of mental functioning. R. 14-15. The ALJ, in so finding, expressly referred to the findings detailed in Dr. Judy M. Iturmendi's July 31, 2018 report, *see* R. 14, which Dr. Iturmendi prepared based on Plaintiff's consultative mental health exam with her on that date. *See* R. 470-473. The ALJ found Dr. Iturmendi's findings to be partially persuasive because they were only based on that one-time assessment. R. 19. With respect to Plaintiff's mental condition, the record further reflects Plaintiff self-referred for psychiatric treatment in March 2020, R. 14, 888, but by May 2020, Plaintiff reported she was feeling good. R. 15, 849.

Plaintiff, in spite of this substantial evidence, argues that the ALJ erred in his evaluation of Plaintiff's subjective complaints by ignoring and/or misstating record evidence. The plethora of claims raised by Plaintiff in support of this contention are not persuasive. Plaintiff, for example, claims that the ALJ erred by noting that Plaintiff spent "a week in Maryland taking care of her mother." D.E. 13 at 32 (quoting R. 17). This claim, however, ignores that the ALJ's finding is wholly consistent with a February 13, 2018 physician's note which expressly states that Plaintiff "spent a week in Maryland taking care of her mother." R. 391. This is true notwithstanding that Plaintiff testified that this note, and another physician's note from 2019, were incorrect insomuch as she went to Maryland only to visit, but not take care of, her mother. R. 62-64.

15

Plaintiff also claims that the ALJ erred because he failed to explicitly reference certain evidence within Plaintiff's voluminous medical records, including "Dr. Ronald Bagner's ordering of an X-ray showing severe scoliosis."  D.E. 13 at 32.  Plaintiff makes this argument notwithstanding that the ALJ accurately noted that Dr. Bagner, in his August 14, 2018 report, expressly noted that Plaintiff "ambulates without difficulty."  R. 475.  Plaintiff likewise claims that the ALJ erred because he did not expressly reference Dr. Souayah's February 26, 2015 EMG/NCV study documenting sensory polyneuropathy, *see* R. 446, and instead cited a different EMG/NCV report which more favorably supported the ALJ's ultimate finding of not disabled.  D.E. 13 at 32.  And Plaintiff avers that the ALJ's decision failed to include "the most important conclusion of Social Security medical consultant, Dr. John M. Boozan, that '[t]he plaintiff is able to see well straight ahead with her chin elevated,'" and instead referenced only that portion of Dr. Boozan's report in which he noted that Plaintiff's "condition is stable."  D.E. 13 at 33 (citing R. 479).

None of these arguments, nor any of the other points raised in Point IV, support reversal of the ALJ's decision.  To begin with, Plaintiff has failed to meaningfully explain how any of these arguments directly relate to her ultimate Point IV claim that "the ALJ erred by improperly evaluating [Plaintiff's] subjective complaints."  D.E. 13 at 31.  Plaintiff's Point IV assertions also ignore the fact that "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur*, 94 F. App'x at 133.  Moreover, Plaintiff fails to recognize that where, as here, there is sufficient in the record which would support two contrary conclusions, the ALJ's decision on the matter is entitled to deference.  Indeed, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy*, 306 F. App'x at 764.  For the

16

reasons discussed above, the Court finds that substantial evidence supports the ALJ's findings with respect to his evaluation of Plaintiff's subjective complaints. Remand on this basis is accordingly not warranted.

### E.  Point V of Plaintiff's Brief

In Point V of her brief, Plaintiff claims that the ALJ erred in finding that Plaintiff could perform her past relevant work as a home health aide, and other medium work, because that finding is not supported by substantial evidence in the record. D.E. 13 at 36. The Court disagrees.

At step four, relying on the vocational expert's ("VE's") testimony, *see* R. 65-75, the ALJ determined that Plaintiff could return to her past relevant job as a home health aide as that job is generally performed. R. 20-21. In the alternative, also relying on the VE's testimony, the ALJ found at step five that there were other jobs Plaintiff could perform during the relevant period, such as hand packager, coffee maker, and kitchen helper. R. 21. The VE's testimony constitutes substantial evidence in support of the ALJ's findings at steps four and five. *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 97 (3d Cir. 2004) ("Vocational expert testimony constitutes substantial evidence for purposes of judicial review where the testimony is in response to proper hypothetical questions which fairly set out all of a claimant's impairments.").

Moreover, the ALJ, as detailed *supra*, presented, in extensive detail, the medical evidence within the record which supported his findings with respect to Plaintiff's physical, visual, and mental limitations. In short, the ALJ's step four and five conclusions are supported by substantial evidence in the record. And Plaintiff has not presented any cogent reason for the Court to arrive at a contrary conclusion.

### F.  Point I of Plaintiff's Brief

Finally, in Point I of her brief, Plaintiff avers that "the ALJ misstated other medical

evidence in key respects so that his findings in steps 2-5 cannot be based on substantial evidence." D.E. 13 at 16. Plaintiff then goes on to list a litany of fragmented, repetitive, scattershot, and otherwise incomplete arguments,[2] D.E. 13 at 16-21, which, "[i]n sum," purportedly demonstrate that the ALJ made "key misstatements and omissions referring to the evidence of record, [and thus, that] the ALJ's decision failed to contain sufficient evidence to support the ALJ's factual findings, resulting in harmful error." D.E. 13 at 21. For the reasons already detailed above, the Court cannot agree. The ALJ's decision denying SSI to Plaintiff is clearly supported by substantial record evidence.

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner. An appropriate Order will follow.

Dated: September 28, 2022

**Evelyn Padin, U.S.D.J.**

---

[2] The Court will not further delve into each and every argument raised in Point I of Plaintiff's brief. First, many of Plaintiff's specific Point I contentions have been addressed earlier in this opinion, *e.g.*, that the ALJ failed to properly credit the medical evidence proffered by, *inter alia*, Drs. Souayah, Egan, and Puzio, that the ALJ's decision fails to account for Plaintiff's June 9, 2021 genetic testing results, *etc*. Second, those arguments that have not been specifically addressed elsewhere in this Opinion are insufficiently developed, and are being discounted by the Court as such. *Conroy*, 316 F. App'x at 144 n.5 (the inclusion of only "one conclusory sentence" in an argument constitutes an "undeveloped argument [that] has been waived"); *Laborers Int'l Union of N.A.*, 26 F.3d at 398 ("a passing reference to an issue . . . will not suffice to bring that issue before this court."); *Berrocal*, 2011 WL 890150, at *3 ("Plaintiff's arguments are entirely conclusory. . . . Such undeveloped arguments are considered abandoned or waived").